UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSHUN ROSAS, #589633,

        Petitioner,

                                                CASE NO. 2:08-CV-13931
v.                                           HONORABLE LAWRENCE P. ZATKOFF

KENNETH MCKEE,

        Respondent.
                                      /

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Roshun Rosas ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, assault with intent to commit murder, Mich. Comp. Laws § 750.83, resisting and obstructing a police officer, Mich. Comp. Laws § 750.479(1)(b), and two counts of possession of firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Saginaw County Circuit Court. He was sentenced to concurrent terms of 18-to-30 years on the armed robbery, conspiracy, and assault convictions, consecutive terms of 15-to-24 months imprisonment on the resisting and obstructing conviction, and two years imprisonment on the felony firearm convictions, to be served concurrently.

Petitioner raises claims concerning the sufficiency of the evidence, the scoring of the sentencing guidelines, and the jury instructions in his petition. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the Court finds that Petitioner is not entitled to federal habeas relief and denies the petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.   Facts and Procedural History

Petitioner's convictions arise from an armed robbery and shooting that occurred at a car wash where he worked in Saginaw, Michigan on March 26, 2005. The Court adopts the summary of the trial testimony as set forth by Petitioner in his supporting brief. Those facts are as follows:

> Eliza Elizalde, closed up for the day at the Firehouse Soft Car Wash where she remained with another employee, Adam Ramon. (II-27) She identified a bank deposit slip showing $2940 including $10 in coins and a check $8 (II-30) She also identified the number of the bank deposit bag, 1530. (II-33)
>
> While standing in the tunnel area of the car wash she was approached by a person wearing all black and carrying a gun. She recognized Roshun Rosas having worked with him and knowing the way he walked. At first she thought that it was a joke. (II-36) He was wearing a knit cap covering part of his face but she could see his eyes, The weapon was a long gun. (II-37) The suspect pointed it at and she pushed it away, thinking it was a joke and told him to quit playing. She also recognized his voice. (II-38) At this time he demanded the cell phone she was using. Then she started taking him seriously. (II-39) He asked for the money, a statement she repeated to Adam. Adam had the bank deposit bag with him when he came out of the office area. At first he handed the bag to him and then pulled his hand back. (II 41) Mr. Rosas said that it wasn't a game and Adam threw the bag to the floor towards Mr. Rosas' foot. (II-42) Mr. Rosas picked up the bag and put it in his pocket. (II-42)
>
> Every now and again in the past Mr. Rosas would ask her about the money procedure. At times Mr. Rosas would be picked up by a friend in a white Blazer. (II-45, 46) After taking the money Mr. Rosas ordered the two people into the mechanical room. (II-47) In court she identified the gun which he had pointed at her, particularly the barrel and the scope. When she and Adam entered the mechanical room Adam turned on the light. (II-49) Mr. Rosas then turned it off. (II-50) He appeared to be frustrated that they were not taking him seriously. (II-51) When Adam turned the light switch he asked Mr. Rosas if that was a paintball gun and

2

pushed it away. (II-53) At the time the gun was pointing at Adam's chest. When Mr. Rosas jerked the gun back towards Adam the door shut and she heard a shot. (II-55) Just before the shots were fired Mr. Rosas said "You still think this is a game." (II-56) Adam opened the door and walked into the room and she asked him if it was a fake gun. He lifted up the shirt and she saw blood coming out and getting on the floor and he asked her to call for help, handing her his cell phone. She called 911. (II-57) By this time the suspect had left with her cell phone and the money bag. (II-58) She saw nothing to indicate that the shot was fired accidentally. (II-59) When Adam lifted his shirt she saw he had been injured on the right side between his stomach and where his breast would end. (II-60)

Sgt. William Masica had been dispatched to a parking complaint but as he was driving he saw a white GMC Jimmy parked on the curb facing the opposite direction he was traveling. It had its hazard lights flashing so the officer pulled in behind to assess the situation. The driver had problems keeping the vehicle running but he was able to get some assistance for himself. The witness described him as a Hispanic male, approximately 20 years old, stocky build. The officer noted the license plate. (II-83) Later, he learned the identity of the driver as Nicholas Moncivais and identified his picture in court. His contact with the driver was about 9 o'clock. (II-85) When the officer left he received another dispatch regarding an armed robbery at the car wash (II-86) where he found an injured employee on the floor having difficulty breathing. (II-89) When he passed the area where the white Jimmy had been he noticed it was gone. (II-87) When he spoke to Adam he was told that he was sure it was Roshun Rosas, another employee. (II-90) A canine unit found the weapon in a grassy area located nearby. The tracks in the snow started right behind the car wash. (II-94) The weapon was a .22 caliber rifle (II-94) loaded with 26 bullets in the magazine and 1 in the chamber. (II-97) The officer had an intuitive feeling that the vehicle he tried to assist was involved in a robbery, (II-101) prompting the dispatcher to rebroadcast the description and plate number. (II-10l)

Officer Dean Kaufman, who was patrol, ran the number through his computer which led to an address where he positioned himself. (II-117) He observed a vehicle with the same description as given by central dispatch. (II-I19) As the vehicle pulled into a driveway at the address indicated (II-119) the officer activated his overhead lights and exited the vehicle. (II-121) When he walked around the house he saw a person running. (II-121) He chased him and when the suspect jumped over a fence gate, large sums of money came spinning out from underneath his clothing; (II-123) and continued to spin out as he ran. Eventually, he was taken into custody by other officers and was identified in court (II-124) as Mr. Rosas. (II-138)

The medical testimony was that Adam sustained a gunshot wound to the right chest (II-145) causing a lung collapse. (II-147) He was in a possibly life-threatening situation because he sustained injury to two separate organ cavities as well as his liver. (II-151) The bullet remains in the bony aspect of his spine. (II-153)

3

Officer Stephan Woodcock learned that Officer Kaufman had spotted an individual running and he assisted (II-163) and caught the subject whom he identified in court as Mr. Rosas. (II-l66) When searched bank deposit slips in the amount of $2940 were found on his person (II-167, 168) together with one $100 bill, two $50 bills and 99 $1 bills. (11-168) The officer also seized a head cloth, or do rag and a batting glove. (II-169) Another batting glove was found on the ground. (III-6)

Sgt. Brian Lipe went to the area of the 1000 block of North Granger (III-7) responding to information put out by central dispatch that a vehicle bearing the identified license plate came back to that address and Officer Kaufman had followed it to that driveway. (III-8) When he arrived he saw a black male wearing dark clothing running towards him. When the subject observed the witness the suspect ran in the other direction. (III-10) The officer also saw another individual on the side of the garage (III-10) who was not located that night. (III-11) The person he chased was arrested and identified as Mr. Rosas. (III-12) This officer also saw money dropping during the chase. (III-14) While chasing Mr. Rosas he saw him reach into his pants and pullout money which he dropped on the sidewalk. (III-15)

Nicholas Moncivais' sister, Jacqueline Moncivais, said she knew Mr. Rosas as a friend of Nicholas and identified a picture of her brother. (III-23) The day in question she lived at 1021 North Granger with her mother, daughter and Nicholas. (III-24) The police showed her a videotape of a police officer talking to someone in a vehicle which she recognized as a white vehicle looking like her mother's Jimmy and she recognized a voice on the tape as that of Nicholas. (III-26) When she arrived home the white Jimmy was in the driveway. Nicholas was permitted to drive this vehicle. (III-27) On the day in question it was in a running condition. (III-28)

Adam Ramon confirmed the testimony of Eliza Elizalde (III-34) et seq. including the fact that when he gave him the money he recognized Mr. Rosas by his eyes and from working with him for six months. (III-38) When he was in the mechanical room he saw the weapon as a long gun with a scope. (III-40) He repeated the incident of turning the light on and off (III-41) and that when the witness asked Mr. Rosas if it was a paintball gun (III-42) the gun was pointed at his head. Mr. Rosas then took a step back and lowered the gun to chest level. Adam didn't remember grabbing or touching the gun; all he remembered was Mr. Rosas saying "no" to the question (III-43) and he felt the hit and fell to the ground. (III-44)

Sgt. Jack Doyle found money and a bank bag on the chase route. (III-66) He counted the money that had been seized along the chase route with the stolen money and they were exactly the same. (III-70) He found a black hood, black hat, the stolen check and a .22 bullet in the white Jimmy. (III-71)

Pet. Brf., pp. 1-6.

When the prosecution rested, defense counsel moved for a directed verdict, but the trial court denied the motion. Petitioner did not testify at trial nor offer witnesses in his defense. At the close of trial, the court instructed the jury on the charged offenses, as well as the lesser offense of assault with intent to commit great bodily harm, but denied defense counsel's request for an instruction on the lesser offense of felonious assault. Following deliberations, the jury found Petitioner guilty of the charged offenses. The trial court subsequently held a sentencing hearing and sentenced Petitioner as previously set forth.

Petitioner thereafter filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in the present petition. The court affirmed his convictions and sentences. *See People v. Rosas*, No. 267866, 2007 WL 1760920 (Mich. Ct. App. June 19, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was denied. *See People v. Rosas*, 480 Mich. 924, 740 N.W.2d 288 (2007).

Petitioner then filed the present habeas petition, raising the following claims:

I. He was deprived of his Ams V and XIV rights of due process to be free of conviction of conspiracy in the absence of proof beyond a reasonable doubt.

II. He was deprived of his Ams V and XIV rights of due process when OV8 was incorrectly applied.

III. He was deprived of his Ams V and XIV rights of due process when the trial court denied his request for a lesser included offense instruction.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

**III. Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA

provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413)); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the

state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Additionally, §2254(e)(1) requires that a federal habeas court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

    **A.     Insufficient Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his conviction for conspiracy to commit armed robbery. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

7

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16)). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, a conspiracy involves the mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or a legal act by unlawful means. *See* Mich. Comp. Laws § 750.157a; *People v. Anderson*, 418 Mich. 31, 36, 340 N.W.2d 634 (1983). Conspiracy may be established by circumstantial evidence and may be based on inference. *See People v. McKenzie*, 206 Mich. App. 425, 428, 522 N.W.2d 661 (1994). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. *See People v. Justice (after remand)*, 454 Mich. 334, 347, 562 N.W.2d 652 (1997). To sustain a conviction for conspiracy to commit armed robbery, the prosecution must prove that defendant knowingly entered into an agreement with at least one other person to commit armed robbery. *See People v. Barker*, No. 253403, 2005 WL 562809, at *2 (Mich. App. March 10, 2005). The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See* Mich. Comp. Laws § 750.529; *People v. Allen*, 201 Mich. App. 98, 100, 505 N.W.2d 869 (1993).

Applying the *Jackson* standard to Petitioner's claim that the trial court erred in denying a directed verdict, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's conspiracy conviction. The court explained in relevant part:

> At trial, an officer testified that, on the night of the armed robbery, he observed a white Jimmy parked on the side of the road near the site of the robbery with its emergency lights flashing. The officer further testified that he pulled around to see if the driver needed assistance. The officer stated that the driver, who he later learned was Moncivais, told him that the Jimmy would not stay running and that he had already arranged for help. Less than one minute after leaving the location where the Jimmy was parked, the officer received a dispatch regarding an armed robbery at a car wash near the location where the Jimmy had been parked. The officer said he returned to the location, but the Jimmy was no longer there. Testimony also established that Moncivais and defendant were friends and that the Jimmy belonged to Moncivais' mother. In addition, officers found items related to the robbery in the Jimmy, which was parked at Moncivais' residence, approximately 15 minutes after the robbery. Finally, there was testimony that the Jimmy had had engine trouble in the recent past, but that the engine had been repaired and was in running condition at the time of the robbery.
>
> Based on this evidence, a rational jury could conclude that defendant escaped from the scene of the robbery in Moncivais' mother's Jimmy. In addition, the testimony clearly established that Moncivais was with the Jimmy shortly before the armed robbery occurred. Hence, a rational jury could conclude that Moncivais was waiting for defendant and drove defendant away from the scene. Further, a rational jury could conclude that Moncivais deliberately misled the officer who stopped to assist him because he knew defendant was robbing the car wash and had agreed to assist defendant in that robbery. Consequently, there was sufficient evidence from which a rational jury could conclude that defendant had conspired with Moncivais to rob the car wash.

*Rosas*, 2007 WL 1760920 at *1-2.

Having reviewed the record, the Court concludes that the Michigan Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application of the law and the facts. The prosecution presented sufficient evidence to support Petitioner's conspiracy conviction. The evidence, viewed in a light favorable to the prosecution, established that Petitioner and Moncivais agreed to commit the armed robbery, worked together to accomplish that task, and fled the scene

9

together following the robbery. The testimony, including that of the victims, also indicated that Petitioner was the person who committed the armed robbery.

Petitioner essentially challenges the inferences the jury drew from the testimony presented during trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The conduct of Petitioner and Moncivais and the circumstances of this case supported the jury's verdict of guilt beyond a reasonable doubt on the conspiracy charge. Habeas relief is not warranted on this claim.

### B. Sentencing Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in scoring offense variable 8 (victim asportation or captivity) of the Michigan sentencing guidelines. Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums. *See* Mich. Comp. Laws §§ 750.529, 750.157a, 750.83, 750.479(1)(b), 750.227b. Sentences imposed within the statutory limits are generally not subject to federal habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Lucey*, 185 F. Supp. 2d at 745; *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's assertion that his sentence is invalid because the trial court incorrectly scored an offense variable under the state sentencing guidelines fails to state a claim for federal habeas relief because it is a state-law claim. *See Austin v. Jackson*, 231 F.3d 298, 300, 301 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 27, 41 (1984)); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Moreover, the trial court found that there was no sentencing error. *See Rosas*, 2007 WL 1760920 at *2. That determination is entitled to deference on habeas review. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not warranted on this state law claim.

Petitioner is also not entitled to relief on any claim that his sentence was based upon inaccurate information. A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation, which the defendant had no opportunity to correct. *See Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (criminal defendant must have a meaningful opportunity to rebut contested information at sentencing)). To prevail on such a claim, the petitioner must show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner has made no such showing. The record reveals that the trial court considered the circumstances of the crime, the pre-sentence report, and other permissible factors at sentencing. Petitioner had an opportunity to contest the accuracy of the reports, the scoring of the guidelines, and other sentencing matters. Petitioner has not shown that the trial court relied upon materially false or inaccurate information in imposing his sentence, which he had no

11

opportunity to correct. Habeas relief is not warranted on such a basis.

### C. Jury Instruction Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court refused to instruct the jury on the lesser offense of felonious assault with respect to the assault with intent to murder charge. The United States Supreme Court has declined to decide whether due process requires the giving of jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).[1] In *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it. More recently, the Supreme Court held that state courts are not constitutionally required to instruct juries in capital cases on crimes which are not lesser included offenses of the charged crime. *See Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998).

The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser included offense. *See Hopkins, supra.* Under Michigan law, felonious assault is not a lesser included offense of assault with the intent to murder. *See People v. Otterbridge*, 477 Mich. 875, 721 N.W.2d 595 (2006). Accordingly, the Court concludes that Petitioner's claim regarding the

---

[1]The Supreme Court's holding in *Beck* was that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a verdict on a lesser included non-capital offense which would have been supported by the evidence.

trial court's refusal to instruct the jury on felonious assault is not cognizable on federal habeas review.[2] *See Clemmons v. Bell*, No. 08-CV-11359, 2009 WL 3300034, *8 (E.D. Mich. Oct. 14, 2009) (denying relief on same claim). Habeas relief is not warranted on this claim.

V.     **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. No certificate

---

[2]Moreover, even if this claim were cognizable and the trial court were to have erred, any such error would have been harmless under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The lack of a jury instruction on felonious assault could not have had a substantial and injurious effect on the verdict because the jurors rejected the lesser included offense of assault with intent to commit great bodily harm, which is more the serious charge.

13

of appealability is warranted in this case nor should Petitioner be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly; **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed *in forma pauperis* on appeal is **DENIED**.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 28, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290